1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11

B. VEASLEY, a minor, by and through her *guardian ad litem*, RODNEY VEASLEY; and MILDRED VEASLEY,

12

**Case No. 3:12-CV-03053-WQH (WVG)**

13

Plaintiffs,

14

v.

**ORDER ON PLAINTIFFS' ORAL REQUEST TO REOPEN EXPERT DISCOVERY**

15

UNITED STATES OF AMERICA,

16

17

Defendant.

18

## I.   **INTRODUCTION**

19

Before the Court are Plaintiffs' oral request to reopen expert discovery so as to

20

allow them to propound five Requests for Admission (collectively, "RFAs," and

21

individually, "RFA"). These RFAs were prompted by the deposition testimony of Dr.

22

Jessica M. Kingston, M.D. ("Kingston"), one of Defendant's expert witnesses, which was

23

conducted on December 15, 2014. The deadline for expert discovery, however, was

24

December 19, 2014, set by an order docketed on October 28, 2013, (Doc. No. 25), and

25

not only did Plaintiffs craft these RFAs after its expiration but they also first contacted

26

27

28

1

the Court, hoping for a judicial reprieve, on February 20, 2015,[1] more than two months later. For the reasons more fully explained below, this Court DENIES Plaintiffs' request.

## II.    BACKGROUND

### A.    Allegations & Procedural History

On December 21, 2012, Plaintiffs filed the relevant complaint. (Doc. No. 1.) In this first filing, Plaintiffs sued Defendant for injuries arising from purportedly negligent medical care provided at the naval hospital within the Marine Corps Base, Camp Pendleton, California, a medical facility owned and maintained by the United States, during the pregnancy of Ms. Mildred Veasley ("Adult Plaintiff") and the birth of B. Veasley ("Minor Plaintiff"). (Id. at 6–8.) As Plaintiffs alleged, "[t]he negligence and carelessness of defendants, in both the placement of an . . . [Intrauterine Device] and in providing prenatal care, consisted of the failure to use, and to insist upon the use of, that degree of skill and care ordinarily used by health care professionals engaged in the practice of their profession in the same or similar locality and under the same or similar circumstances." (Id. at 6.) As a result, the Minor Plaintiff was born prematurely and suffered permanent physical and mental injuries. (Id.) As Plaintiffs also contend, the Adult Plaintiff was herself harmed, "sustaining to her body and shock and injury to her nervous system and person." (Id.) In addition, the Adult Plaintiff maintained, she endured "severe emotional and psychological distress" as a result of this most painful birth and Defendant's arguably substandard treatment. (Id. at 7–8.) Plaintiffs prayed for "general and specific damages . . . in an amount to be proven at trial," "future medical and life care expenses, pre-judgment interest, legal costs, and "such other and further relief as the court may deem just and proper." (Id. at 8.)

After a series of delays and continuances, (Doc. Nos. 8, 9, 11, 12), the Parties appeared in this Court for an Early Neutral Evaluation Conference on July 17, 2013,

---

[1] Further detail was provided to the Court during a second call held on February 24, 2015.

2

(Doc. No. 13.) On October 28, 2013, after several conference dates had been vacated, this Court held a telephonic Case Management Conference. On that same day, the Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings ("CMC Order") was issued. (Doc. No. 25.) This six-page order set a slew of deadlines, "dates and times" to be modified only "for <u>good cause</u> shown." (<u>Id.</u> at 5 (emphasis added).) Among this panoply of dates, the Court established the final day for "[a]ll discovery pertaining to facts" as May 23, 2014, and the deadline for "[a]ll discovery pertaining to expert witnesses" as December 17, 2014. (<u>Id.</u> at 2 (emphases in original).) At the conclusion of a status conference held on October 20, 2014, the Court reminded counsel that these dates would not be changed and alerted the Parties about the imminent approach of this case's December cutoffs. (Doc. No. 31.)

**B.    Present Dispute**

In spite of this admonition,[2] possibly due to the last minute failure of the Parties' mediation effort, Plaintiffs' counsel first deposed Kingston on December 15, 2014,[3] leaving Plaintiffs with four days for concluding any and all further expert discovery. Nonetheless, after this deadline had run and based on his interpretation of Kingston's testimony, Plaintiffs' counsel determined to seek a court order reopening expert discovery. He wishes to do so in the hopes of propounding the following RFAs, provided to this Court via email:

    (1)    That more probably than not, on September 9, 2008, Mildred Veasley was pregnant.

    (2)    That in inserting an IUD into Mildred Veasley on September 9, 2008, Jennifer Almy, M.D., was negligent.

    (3)    That at the time she inserted an IUD into Mildred Veasley on September 9,

---

[2] Which party is responsible for this delay, if any, is irrelevant.

[3] A copy of the certified deposition transcript was provided to the Court by Defendant's counsel.

3

2008, Jennifer Almy, M.D., was an agent or employee of the United States of America, acting within the course of said agency or employment.

(4)   That more probably than not, the insertion of an IUD into Mildred Veasley on September 9, 2008, was a significant factor in causing harm to Brianna Veasley.

(5)   That more probably than not, the insertion of an IUD into Mildred Veasley on September 9, 2008, was a significant factor in causing Mildred Veasley to suffer emotional distress.

As Plaintiffs assert, discovery, to be limited to the posing of these lone RFA, should be reopened for four reasons, the fourth implicit in their asseverations. First, such a tightly cabined recommencement will impose no undue burden on the Court, with no other deadline likely to be affected by such a small alteration in a preset schedule. Second, these RFAs pose no grand hurdle to Defendant, for they can be answered, whether in the affirmative or the negative, within hours or days of their formal tendering. Finally, Plaintiffs insist, equity and fairness militate in their favor as the evidence thereby obtained may be critical and Plaintiffs simply lacked sufficient time to analyze Kingston's words and discern the propriety–indeed, the apparently pressing need–for even articulating these five RFAs. Though unstated, implicit in this contention is the belief that these RFAs may yet shorten this proceeding and thereby preserve judicial resources and economy by hastening its denouement. Orally communicated to this Court, these arguments constitute the Plaintiffs' singular bases.

Naturally, Defendant objects and has proffered two discrete reasons. First, four of the five RFAs arguably implicate factual evidence that was available or should have been discovered by Plaintiffs prior to December 17, 2014. That Plaintiffs' realization of their potential relevance post-dated this pivotal day is immaterial, for the evidence itself, to the extent that it does exist, was eminently discoverable in the summer and fall of 2014. Second, at least one RFA seemingly demands Defendant make a legal admission of its

4

own negligence, thereby conceding Plaintiffs' case and forfeiting the cogency of any possible defense. Consequently, it is an inappropriate RFA as a matter of law.

### III.    DISCUSSION

### A.    Presence of Prejudice

Distinct from any analysis into the temporal and substantive (de)merits of Plaintiffs' proposed RFAs, see infra Part III.B, this Court is unconvinced by Plaintiffs' insistence on the presumed absence of any prejudice if this Court disregards an explicit deadline set in an order of crystal clarity for three reasons. As a threshold matter, the existence or nonexistence of prejudice is not directly relevant pursuant to the applicable standard, one set forth in both an imbricated body of law and the Federal Rules of Civil Procedure.[4/] See supra Part III.B; see also Schultz v. Wal-Mart Stores, Inc., 68 F. App'x 130, 132 (9th Cir. 2003) ("Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification"). More significantly, this conclusory assertion has been explicitly rejected by the Ninth Circuit. As it once eloquently noted, albeit in regards to a delayed motion to amend a complaint, "[a] need to reopen discovery and therefore delay the proceedings" will support "[a] finding of prejudice." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999). Finally, for a case to be justly, efficiently, and speedily resolved, Rule 1's unchanging mandate, deadlines cannot be easily set aside, especially long after their passing, and any disruption not merited by the greatest need will always play havoc with a case's previously settled and judicially determined course. See MMMT Holdings Corp. v. NSGI Holdings, Inc., No. C12-01570RSL, 2014 U.S. Dist. LEXIS 79604, at *12–13, 2014 WL 2573290, at *4 (W.D. Wash. June 9, 2014) (refusing to grant a motion to amend the complaint as it would require discovery to be reopened, which would lead

---

[4/] In this order, any and all reference to "Rule" or "Rules" is to the Federal Rules of Civil Procedure.

1  to "additional burdens [that would] constitute additional time, expenses, and resources at
2  a late stage in the proceedings which would prejudice defendant"); O'Campo v. Chico
3  Crossroads, LP, No. Civ S-10-1100 KJM-CMK, 2012 U.S. Dist. LEXIS 74812, at *6–7,
4  (E.D. Cal. May 30, 2012) (same). For this very reason, courts have warned, the dates
5  established by any scheduling order are not "meaningless"; rather, they are imbued with
6  concrete substance and great significance. Sherman v. Winco Fireworks, Inc., 532 F.3d
7  709, 716 (8th Cir. 2008) (quoting Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th
8  Cir. 1998)). As such, animated by the belief that any emendation complicates any attempt
9  at a case's prompt adjudication, courts have long refused to modify a deadline but upon
10  the most decisive showing of a "good cause," the standard applied in this order's next
11  subsection.

12  **B.    Analyses of RFAs' Impropriety**

13      As a substantive matter, moreover, this Court agrees with Defendants. Quite
14  simply, two RFAs seek admissions from Defendant relating to facts that Plaintiffs could
15  have previously uncovered by their own efforts. Quite simply, the remaining RFAs
16  compel Defendant to accept Plaintiffs' legal theory, still unproven, as their own,
17  engrafting unto it a patina of uncontested certainty, and forfeit any defense they may later
18  properly advance. Distinguishable in content and nature, the RFAs' defects must be
19  separately weighed in accordance with the prescriptions imposed by both prevailing
20  juridical practice and Rules' text and spirit.

21      Into the first category, this Court places RFA Numbers 1 and 3. These questions
22  deal with factual matters that Plaintiffs should have known and verified by any number of
23  means, including timely RFAs, before Kingston's deposition. As such, to reopen
24  discovery so as to authorize these more recent RFAs' submission is to reward Plaintiffs
25  and punish Defendant for a dilatoriness that infected one party alone. Certainly, this bare
26  fact cautions against the discretionary finding of "good cause," a test primarily focused
27  on the diligence of the requesting party and reiterated in this Court's CMC Order,
28

6

necessary to reopen discovery in light of Defendant's known opposition before a pretrial order has issued.[5] FED. R. CIV. P. 16(b)(4); <u>Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)</u>, 715 F.3d 716, 737 (9th Cir. 2013) (citing <u>Johnson v. Mammoth Recreations</u>, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment"))); <u>see also, e.g.</u>, <u>Pandeosingh v. Am. Med. Response, Inc.</u>, No. 14-CV-01792-PAB-KMT, 2014 U.S. Dist. LEXIS 152825, at *3–4, 2014 WL 5465220, at *1 (D. Colo. Oct. 28, 2014) (listing, among the factors courts consider, "whether the request to reopen or extend discovery is opposed" and "whether the moving party was diligent in obtaining discovery within the guidelines established by the Court");[6] <u>United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.</u>, 576 F. Supp. 2d 128, 133 (D.D.C. 2008) (holding that "reopening discovery would require a showing of good cause" pursuant to Rule 16(b)(4)); <u>Gray v. Darien</u>, 927 F.2d 69, 74 (2d Cir. 1991) (same). In short, no diligence and thus no "good cause" can be found when an RFA, like RFA Numbers 1 and 3 here, centers on factual allegations confirmable prior to a deadline's cessation, this possibility inconsistent with decisive proof of unquestioned and unquestionable diligence. <u>See, e.g.</u>, <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1294–95 (9th Cir.

---

[5] If a pretrial order had released, a different standard–"manifest injustice"–would apply. FED. R. CIV. P. 16(e); <u>United States v. Sci. Applications Int'l Corp.</u>, 301 F.R.D. 1, (D.D.C. 2013). That standard would have only been harder for the Plaintiffs to satisfy. FED. R. CIV. P. 16 advisory committee note to 1983 amendments ("Since the scheduling order is entered early in the litigation, . . . [the 'good cause'] standard [in Rule 16(b)(4)] seems more appropriate than a 'manifest injustice' or 'substantial hardship' test.").

[6] The full list includes the following six: "(1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the nonmoving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that discovery will lead to relevant evidence." <u>Smith v. United States</u>, 834 F.2d 166, 169 (10th Cir. 1987). Some courts have described this test as separate from the good cause standard encoded in Rule 16(b)(4). <u>United States v. Cemex, Inc.</u>, No. 09-cv-00019-MSK-MEH, 2011 U.S. Dist. LEXIS 11951, at *5–6, 2011 WL 319963, at *2 (D. Colo. Jan. 27, 2011). Even if true, these factors remain relevant and <u>Smith</u> and its well-argued progeny are persuasive in delineating the content of an inherently ambiguous term like "good cause."

2001) (declining to find "good cause" under Rule 16(b) when the relevant evidence was within the parties' unknowing but nonetheless indisputable possession pre-deadline); Wichita Falls Office Assoc. v. Banc One Corp., 978 F.2d 915, 919 (5th Cir. 1992) ("[T]he trial court need not aid non-movants who have occasioned their own predicament through sloth."); cf. Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986) (holding that even under the liberal Rule 15 standard "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action").

As to RFA Numbers 2, 4, and 5, this Court turns to the Rules' plain text. Rule 36(a)(1) requires that a RFA be limited to "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). The purpose of this procedural mandate "is to both facilitate proof and to narrow the issues." Tulip Computers Int'l B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002). So limited, courts have repeatedly deemed as improper a RFA that seeks a legal conclusion. 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 36.10[8] (3d ed.). In this Court's view, RFA Numbers 2, 4, and 5 fall within this broad category for one reason alone: by means of these three queries, Plaintiffs are essentially asking that Defendant accede to at least one element of the cause of action for which Plaintiffs, not Defendant, bear the burden of persuasion and of proof in this proceeding, specifically either the causation or injury prongs of any and all negligence causes of action. As a general matter, then, regardless of a deadline's passing, Rule 36 would bar several of Plaintiffs' projected RFAs as venturing beyond the permitted boundaries of these oft-utilized discovery tools.

Lastly, this Court regards the proposed RFAs as having run afoul of two rules of thumb. First, a plaintiff may not effectively "re-serve the complaint in the form of a request for admissions." Perez v. Miami-Dade County, 297 F. 3d 1255, 1269 (11th Cir.

2002) (deeming such RFA to be "an abuse of Rule 36").  Every proposed RFA strikes this Court as a rather clarion echo of Plaintiffs' first filing.  (<u>Compare</u> Part II.B, <u>with</u> Doc. No. 1.) Second, if these RFAs were to be posed, Defendant would almost be surely free to deny each item without the remotest fear of sanctions, on the theory that "issues *obviously subject to dispute should be resolved at trial*, not in a discovery motion." <u>Perez</u>, 297 F. 3d at 1269 (emphasis in original) (construing Rule 37(c)(2)). As the plain text of at least three of these RFAs reveals, they invariably delve into such patently contested matters. To the back-and-forth of any future trial,[7/] with admissible evidence pondered over by the rightful fact finder, this Court will leave their ultimate determination.

## IV.  **CONCLUSION**

Based on the foregoing, this Court DENIES Plaintiffs' request to reopen expert discovery.


IT IS SO ORDERED.

DATED:  March 9, 2015

_____
Hon. William V. Gallo
U.S. Magistrate Judge

---

[7/] . . . or a dispositive motion.

9